Good morning. My name is Arman Gulkasian. I represent the petitioners in this matter, Mr. Arman Dobroyan, Ms. Clara Tomasian, and their daughter, Margarita Dobroyan. With the case in which the petitioners seek review of the Board of Immigration appeals, two decisions. The first decision was the Board's denial of the petitioners' applications for asylum, withholding of removal, and the Convention Against Torture. The second subsequent denial was the Board's refusal to review the petitioners' applications for asylum, withholding   of removal, and the Convention Against Torture. We ask this because the petitioners' claim of due process violation arising out of the former counsel's ineffective assistance of counsel before it addresses the underlying claims for asylum, withholding of removal, and Convention Against Torture. We ask this because the petitioners' former counsel's performance fell considerably below the objective. It took your client a long time to go back to the BIA with that. BIA said you weren't sufficiently diligent to raise that concern. Your Honor, petitioners were represented by the same counsel at the BIA level when they sought review of the IJ's decision. Well, it was made clear in the IJ's decision that the lack of corroboration, not having any testimony from the brother or the parents who were apparently in the area and available, was a real problem. And your client should have known that right at that time. And how long did it take for the issue to come up to the BIA? Your Honor, my client was misled by the attorney. How long did it take for the issue to come up to the BIA? Years. Two years. Yes, Your Honor. And your client knew that the lack of corroboration was a key factor in the IJ's decision. What's missing? Not necessarily, Your Honor. He was misled by his former attorney to believe that she was going to file a motion to reopen a remand with the Board of Immigration Appeals to bring the case back to the IJ for submission of corroborating evidence. Mr. Dabroyan, on several occasions, met with Attorney Modessian in his efforts to try to suggest producing corroborating evidence. And Ms. Modessian advised him against Mr. Dabroyan's interest that, you know, it would be a better idea not to have the brother testify. In essence, she abandoned her role as true counsel for Mr. Dabroyan and put Mr. Dabroyan's interest before her. No, the BIA obviously didn't accept that. What compels us to decide the BIA was wrong on that score? Your Honor, this Court has long established that, you know, the statute may be told if it is established that the Petitioner has exercised due diligence to. What due diligence? I mean, the BIA says there was not due diligence here. What evidence compels a contrary conclusion? Your Honor, in Avakian v. Holder, this Court established three-pronged test, which is used to assess the Petitioner's, you know, due diligence. And the due diligence doesn't have to be extreme. It has to be reasonable. So the BIA put a onerous burden on Mr. Dabroyan for him to figure out himself Your Honor, the BIA says that your client was aware at the time of the I.J. announced his decision that the lack of corroboration, the lack of testimony from his brother and parents was a big problem. Your Honor, your client must have known that. Now, it may be your client accepted explanations by a lawyer, but why is the BIA decided and required, compelled to decide based on his testimony that, well, my lawyer told me different, that by sitting around for a few years, that shows due diligence? He was misled, Your Honor. Well, okay. And in his efforts to, you know, raise the claim before the Board of Immigration Appeals, Your Honor, right after the BIA rendered a decision on the underlying asylum case, Mr. Dabroyan sought, you know, advice from different counsel from my office. And that's when we actually received the record and reviewed and figured out that there exists legal claim of ineffective assistance of counsel against Attorney Maldacen. So it would be, you know, unreasonable to put a onerous burden on the petitioner to figure out himself that there existed legal claim against his former counsel. But he eventually did. He eventually did, based on the advice of his current counsel, Judge Ferris. And this Court applies equitable tolling in situations where, you know, despite all obtain vital information bearing on the existence of the claim. So in this case, you know, petitioner learned about the existence of the legal claim from his current attorney when we received and reviewed the record. You know, we believe that the petitioner has established that, you know, he could be released from the Avakian Court because the petitioner reasonably placed his reliance on Attorney Maldacen and deferred to her alleged expertise in immigration law. You know it's your time, but you may want to save some time for rebuttal. I would like to reserve 2 minutes of my time for rebuttal. And a reasonable person in Mr. Dabroyan's position would put his trust and confidence in his lawyer's abilities and expertise. And Mr. Dabroyan was misled, as I stated before, and the BIA placed an undue burden on Mr. Dabroyan. Mr. Dabroyan is not an attorney, and he could not reasonably be expected to know that additional corroborating evidence or his relative testimony were key. The IJ's decision says specifically, there are a few paragraphs that talk about the failure to have the brother and the parents testify, even though they're in the area, and commenting specifically on your client's failure to offer a good explanation for that. At that moment, the IJ made it clear that was a problem. Your Honor, there is a difference. And you're telling me that your client heard from his lawyer it's not a problem and decided, okay, fine, I won't do anything more. That's diligence. Your Honor, there is a difference between knowing what the underlying reasons are for the denial and knowing whether there exists any legal claim against his former counsel. So the BIA failed to draw that distinction. I'd like to reserve the remaining. Yes, Your Honor. Good morning. Good morning, Your Honors. Ann Wellhoff, a respondent, United States Attorney General Lynch. May it please the Court. I'll address, there's three issues in this case, and I'll address them. First, I'll address the issue of the denial, board's denial of the motion to reopen, based on lack of due diligence. As Your Honors have noted, the petitioner was overwhelmingly aware of any problems in representation with this client as early as December 9th, 2010, when he gave his testimony and was very specifically questioned by the government as to why the reasonably available corroborative evidence was not brought forth. Did he testify in English? Yet there was a language interpreter, Your Honor. There was a language interpreter. Yes. And so, I see. Okay, thank you very much. Okay. And you'll notice that in this record, there's at least three reasons given by this petitioner for failing to bring corroboration. The first reason he's given, when questioned on December 9th, 2010, at trial, why is your brother not here, his response is, the reason he's busy. And he's also involved in his business with the procedure necessary for becoming a citizen, and I don't see it necessary. Second reason he gives in his first motion to reopen with the board, he says, my brother was unwilling to testify. This is Administrative Record 162. But now he's willing. Third version of why his brother didn't testify, I would point out, is at Administrative Record 28. Now he says, my brother, and I met with my lawyer at her office, my brother told me that he wanted to come to court and testify on my behalf, because his experience in Armenia related to my asylum claim. However, the lawyer told him that wasn't necessary. Now, clearly, and the same goes for the parents, you'll see three different reasons why the parents didn't show up. The first one is given at trial, he just doesn't see the point. He says he can testify as to what happened to him, he doesn't need any help. Second reason is in the first motion to reopen, he says they were unavailable, but now they're available. And then the third reason is, again, the motion to reopen that's before this Court. What do you see as a narrow issue that's before this Court on this case as is postulated? I believe the evidence, he would have to show the evidence compelled the conclusion that he exercised diligence. And he simply can't do that in this case. In fact, his own words. The reason I wanted you to do it is because he's going to rebut. And that's the question for us, isn't it? Whether this record compels a conclusion that we should reach a different. That is the answer. All right. The issue, excuse me. And the record clearly does not compel a finding that he exercised diligence in pursuing this case. The fact that he was at his attorney's office by his own admission, his third declaration which is attached to his motion to reopen that is currently before this Court. He goes into great detail about how he begged his attorney at least twice to not only put in medical records, but supposedly to bring his brother and parents in. Assuming that happens and then he goes to court and the government's making a big deal about the fact that these people aren't here and why don't you remember anything, any reasonable person is on notice, that's a problem we didn't do that. He was on notice. There was a problem and clearly did nothing about it for approximately two years later. And, again, I would point out there's at least his versions of why this evidence was not put forth vary depending on testimony or which motion to reopen you look at. It's all over the Board. So there's simply no evidence that would compel the conclusion he exercised diligence in this case, and the Board did not abuse its discretion in denying the motion. On the adverse credibility issue which Petitioner did not touch on, I would just refer the Court to Respondent's brief. Respondent pointed out several inconsistencies in his story that clearly show that the agency's finding of lack of credibility is grounded in substantial evidence, and there's no evidence that would compel a contrary conclusion. If Your Honor has, I'm completed. If there's any questions, I'd be happy to entertain those. Apparently not. Thank you. Thank you. We'll hear rebuttal. Thank you. I'd like to offer two explanations regarding Mr. Dabroyan's responses to the immigration judge's questions as to why he did not call his brother or parents to the stand for testimony. Mr. Dabroyan is a lay person and was not aware of the real ID requirements that he had to produce, must produce, you know, corroborating evidence. Well, the question we're facing now is less why didn't he at the time of the first IHA trial. The question we've been talking about is has he shown diligence once that problem should have been made aware to him that the absence of corroboration was a problem explicitly cited in the IJ's decision. What diligence did he demonstrate after that in trying to address that problem? And the BIA said he was not sufficiently diligent. And the questions we keep posing to you is what compels a contrary conclusion given the passage of time after the time he must have heard the IJ's decision. Your Honor, Mr. Dabroyan found out that he was misled by the attorney when he received the BIA's first decision denying his applications for relief because he was misled by Attorney Mardessian. She promised him that she would file a motion to remand to bring the case back to the immigration judge so that they would call the brother to testify on his behalf. This is not in the record, but as a side note, I'd like to bring to this Court's attention that Ms. Mardessian represented the brother as well, and she had a conflict of interest. But she put that conflict aside and advised the brother that it would be wise for him not to testify until he becomes a citizen. By doing so, she essentially abandoned her role as Mr. Dabroyan's counsel. And, you know, the second explanation I'd like to offer is, you know, assuming this Court finds Mr. Dabroyan's declaration credible, and it should because there is nothing inherently unbelievable about the facts stated therein, Mr. Dabroyan was misled by Attorney Mardessian in believing that he did not need any corroborating testimony on his behalf. Okay. Attorney Mardessian's responsibility... Not more than a minute over time. Is there anything in particular you need to tell us? No, Your Honor. Okay. We have your argument. We have your briefs. We thank both counsel for your helpful arguments in this case. The case just argues...
judges: Farris, Clifton, Bea